## In re Lane's Parole.

*Criminal law and procedure — Parole — Commutation — Good behavior— Robbery of post-office while on parole—Act of June 19, 1911, as amended by Act of June 3, 1915.*

1. Section 10 of the Parole Act of June 19, 1911, P. L. 1055, as amended by the Act of June 3, 1915, P. L. 788, is based upon the theory that punishment for crime has, as a part of its purpose, the reformation of the criminal, and that, as an inducement to such reformation, he should, while in prison, have an opportunity by good conduct to obtain his release after serving the minimum sentence.

2. The policy of the law is that, if while on parole, he commits a crime of the grade for which the laws of this State inflict punishment by imprisonment, he thereby proves that he has not reformed, that his release was a mistake, and that he should return and complete his original sentence.

3. The commission of a crime of such a grade outside of Pennsylvania, or upon Federal property within Pennsylvania, proves that he has not reformed, just as much as the commission of the same crime within this State's jurisdiction.

4. The provision of the act as to the order in which a prisoner shall serve his sentences is simply for the purpose of eliminating any uncertainty as to the order. The fact that a paroled convict has served a sentence in a Federal penitentiary outside of this State cannot operate to defeat the requirement that he shall serve in this State the unexpired term of the sentence upon which he was paroled.

5. A prisoner who has violated the terms of his parole and been returned to a penitentiary in this State to serve the balance of his sentence after serving a sentence in a Federal penitentiary, must serve the remainder of the original sentence without commutation or parole.

Department of Justice. Opinion to Stanley P. Ash, Warden of the Western State Penitentiary.

CAMPBELL, 1st Dep. Att'y-Gen., June 5, 1925.—In your recent letter to this department you request an opinion as to the legality of the detention of Hugh Lane as a prisoner in the Western State Penitentiary.

The facts are as follows: Lane was sentenced by the court of Bedford County on Jan. 18, 1916, upon conviction of burglary, to undergo imprisonment in the Western State Penitentiary for the term of not less than four years and not more than six years. At the expiration of his minimum sentence, Jan. 10, 1920, he was paroled by the Governor. On Nov. 13, 1920, after conviction in the United States District Court for the Western District of Pennsylvania of robbery of a United States post-office, he was sentenced by that court to undergo imprisonment in the Federal prison at Atlanta, Georgia, for the term of four years. After serving this last sentence he was returned to the Western State Penitentiary because of violation of his parole, and is now being held there to serve the unexpired portion of the sentence imposed upon him by the court of Bedford County.

The conditions attached to the parole granted Lane are the same as those provided in section 10 of the Act of June 19, 1911, P. L. 1055, as amended by the Act of June 3, 1915, P. L. 788 (West Penna. Statutes, § 8249), and so the authority to detain him in your institution is to be determined under the pro-

visions of that section of the act, which is as follows: "If any convict released on parole, as provided for in this act, shall, during the period of parole, be convicted of any crime punishable by imprisonment under the laws of this Commonwealth and sentenced to any place of confinement other than a penitentiary, such convict shall, in addition to the penalty imposed for such crime committed during the said period, and after expiration of the same, be compelled, by detainer and remand as for an escape, to serve in the penitentiary to which said convict had been originally committed the remainder of the term (without commutation) which such convict would have been compelled to serve but for the commutation authorizing said parole, and if not in conflict with the terms and conditions of the same as granted by the Governor; but, if sentenced to a penitentiary, then the service of the remainder of the said term originally imposed shall precede the commencement of the term imposed for said crime."

Lane contends:

1. That his detention is unlawful because the conviction for robbery in the United States court did not constitute the conviction of a "crime punishable by imprisonment under the laws of this Commonwealth."

2. That having served the sentence of the Federal court in a penitentiary, he cannot be held after discharge therefrom to serve the balance of the sentence imposed by the court of Bedford County, because the act requires the latter to be completed before the former commences.

3. If neither of the two former contentions is sustained, he then asks if he is subject to parole under the provisions of the aforesaid Act of 1911.

These three questions will be discussed by reference to the above numbers.

### 1.

This question is controlled by the opinion of this department, rendered by Deputy Attorney-General Hargest in Stupp's Case, 48 Pa. C. C. Reps. 235, in which it was held that the language of the said Act of 1911 "requires any convict to serve the balance of an unexpired term if he has been convicted outside of Pennsylvania for any crime of a grade which, if committed in Pennsylvania, would be punishable under the laws of this Commonwealth."

In that case Stupp, while on parole from the Eastern State Penitentiary, was convicted of the crime of forgery in the courts of Ohio, for which he was sentenced to be confined in the Ohio State Penitentiary. After serving a portion of his sentence he was released and returned to the Eastern State Penitentiary of this State to serve the unexpired portion of his original sentence in that institution.

The decision in the Stupp case is that the legislature did not intend that a paroled convict could not be required to serve out the balance of his term if he committed a crime in an adjoining state, while he would be required to do so if the crime were committed in this State.

We might say, with respect to Lane's case, the legislature certainly did not intend that a paroled convict should be relieved from serving the balance of his term because he committed a crime within a Federal building, but that he must serve such balance if the same crime had been committed on the street in front of such building or in an adjacent storeroom.

The Parole Act is based upon the theory that punishment for crime has, as a part of its purpose, the reformation of the criminal, and that, as an inducement to such reformation, he should, while in prison, have an opportunity by his good conduct to obtain his release after serving his minimum sentence. It is also based upon the theory that as an inducement to continue such reformation after his release, the balance of his sentence should be suspended pending

his good behavior. The policy of the law is that if, while on parole, he commits a crime of the grade for which the laws of this State inflict punishment by imprisonment, he thereby proves that he has not reformed, and that his release prior to the completion of his sentence was a mistake, and that he should return and complete his original sentence.

The commission of a crime of such a grade outside of Pennsylvania, or upon Federal property within Pennsylvania, proves that he has not reformed, just as much as the commission of the same crime within the jurisdiction of the Pennsylvania courts.

The crime of which Lane was convicted while on parole, reported as robbery of a post-office, would undoubtedly have constituted either robbery, larceny or felonious entry with intent to commit a felony, any one of which would have been punishable under the laws of this State by imprisonment in the penitentiary.

2.

The same question was involved in Stupp's Case, 48 Pa. C. C. Repr. 235, although not raised by him. The Parole Act specifies that a paroled prisoner, who is sentenced to a penitentiary upon conviction of a crime committed during the period of his parole, shall first complete the unserved balance of his original sentence and shall then serve a sentence for the crime committed while on parole; but that if he is sentenced to a prison other than a penitentiary for the crime committed on parole, he shall first serve the last sentence in such institution and shall then be delivered to the penitentiary to which he was originally sentenced, there to serve out the unexpired balance of such original sentence. This provision is simply for the purpose of eliminating any uncertainty as to the order in which such sentences should be served. The term "Penitentiary" undoubtedly refers to a penitentiary within this State. The fact that such paroled convict had served a sentence in a penitentiary without this State imposed upon a conviction of a crime "punishable by imprisonment under the laws of this Commonwealth" cannot defeat the requirement of the act that he shall serve out the unexpired balance of the sentence upon which he was paroled. And such unexpired balance is to be served in the penitentiary to which he was originally sentenced.

3.

This question is ruled by the opinion in Stupp's Case, 48 Pa. C. C. Reps. 235, in which it is held: "The section requires such convict to serve the remainder of such term 'without commutation.'"

That case was determined under the provisions of section 10 of the Act of June 19, 1911, P. L. 1055, but the Amendment of 1915 has made no change in this respect. The Act of 1915 specifically provides that the remainder of the original sentence shall be served without commutation.

I, therefore, advise you that each of Lane's three contentions must be answered in the negative and that he is to be detained in the Western Penitentiary as a prisoner until he has served the unexpired balance of the sentence he was serving at the time of his parole; also that he is not entitled to commutation or parole under the provisions of the aforesaid Acts of 1911 and 1915. This, of course, does not affect the constitutional right of the Governor, with the advice of the Pardon Board, to commute his sentence or grant him a pardon.                              From C. P. Addams, Harrisburg, Pa.